Filed 5/22/25  P. v. Perez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JESSE PEREZ,<br><br>    Defendant and Appellant. | D083710<br><br><br><br>(Super. Ct. No. FSB12710) |

APPEAL from orders of the Superior Court of San Bernardino County, Steve Malone, Judge.  Affirmed.

Melanie L. Skehar, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Daniel Rogers and Elizabeth M. Kuchar, Deputy Attorneys General, for Plaintiff and Respondent.

In 1997, Jesse Perez pleaded guilty to second degree murder and was sentenced to 19 years to life in prison.  Because he is not a citizen, his conviction renders him deportable under federal law.  In 2023, Perez sought

to vacate his plea, claiming the court failed to adequately warn him of the immigration consequences of his plea as required by Penal Code[1] section 1016.5. However, Perez's plea agreement contained the admonition required by section 1016.5, and both he and his attorney indicated he had read and understood the terms of the plea. The trial court properly declined to vacate his plea on this ground.

Perez also sought recall of his sentence under section 1170, subdivision (d)(1)(A), claiming he qualifies as a youth offender whose indeterminate sentence is effectively life without parole because he cannot provide a concrete postrelease plan. Perez, who is eligible for deportation to Mexico, argues he lacks any familial or other connections in that country, and therefore has no means of devising realistic parole plans. Perez has not shown parole has been or will be denied because he lacks ties to Mexico. His sentence is thus not the functional equivalent of life without parole, and the trial court correctly found he was ineligible for recall and resentencing under section 1170, subdivision (d)(1)(A). We affirm the court's orders.

## BACKGROUND[2]

In 1997, when Perez was 16 years old, he was charged with first degree murder (§ 187, subd. (a)), attempted first degree murder (§§ 664, 187, subd. (a)), and two counts of second degree robbery (§ 211). All counts alleged that a principal in the offense was armed with a firearm (§ 12022, subd. (a)(1)) and that Perez personally used a firearm in the commission of each offense (§ 12022.5, subd. (a)).

---

[1]     Further statutory references are to the Penal Code.

[2]     Perez requests judicial notice of various documents not submitted to the trial court. Because these are not relevant to our disposition, the request for judicial notice is denied.

Perez pleaded guilty to one count of second degree murder and admitted the firearm use enhancement allegation. Pursuant to the plea agreement, the remaining charges and allegations were dismissed, and Perez was sentenced to 19 years to life in prison.

In 2023, Perez filed a motion to vacate the judgment and withdraw his plea under section 1016.5, arguing he was not adequately advised of the immigration consequences of his plea. Perez argued neither the court nor his counsel warned him that, due to his conviction, he is deportable following release from prison.

The trial court found Perez did not qualify for relief under section 1016.5 because he acknowledged in his change of plea form that his conviction "may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization," which is all that is required under section 1016.5. The court further found the judge presiding over the change of plea hearing had questioned him and his counsel "with great detail [to] ensure that [he] had actually read and understand his plea form and all of [the] declarations."

The court also addressed Perez's claim that the "court is vested with the discretion to vacate his 1997 plea agreement in the interest of justice." The court considered, among other factors, the nature of Perez's offense, his age at the time of the plea, his claimed traumatic brain injury, and other circumstances of the plea, and ultimately concluded the interest of justice would not be served by vacating Perez's plea.

Perez also filed a petition for recall and resentencing pursuant to section 1170, subdivision (d)(1)(A), arguing his sentence was effectively life without parole. He claimed he cannot be eligible for parole because he will be deported after release from prison and cannot show he has realistic plans in

Mexico, where he has not lived since he was a young child and no longer has any connections. After a hearing, the court denied this petition as well.[3]

## DISCUSSION

A.     *Section 1016.5*

Perez argues the trial court abused its discretion by denying his motion to vacate his conviction under section 1016.5. Section 1016.5, subdivision (a), provides:

> "Prior to acceptance of a plea of guilty . . . , the court shall administer the following advisement on the record to the defendant:

> "If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."

Under section 1016.5, subdivision (b), "If . . . the court fails to advise the defendant as required by this section . . . , the court . . . shall vacate the judgment and permit the defendant to withdraw the plea of guilty . . . ." The denial of a motion under section 1016.5 is reviewed for abuse of discretion, although issues of law must be decided de novo. (*People v. Akhile* (2008) 167 Cal.App.4th 558, 562–563.)

Perez's change of plea form states: "I understand that if I am not a citizen of the United States, deportation, exclusion from admission to the United states or denial of naturalization may result from a conviction of the offense(s) to which I plead guilty . . . ." Perez initialed next to this paragraph.

---

3     Perez has also filed a petition for writ of habeas corpus (*In re Perez* (D084947)), in which he challenges his conviction and sentence under the Equal Protection Clause, the Racial Justice Act, and principles of contract law. We previously ordered the petition considered with this appeal and deny the petition by separate order, issued concurrently with this opinion.

4

This admonition in Perez's plea agreement satisfies the requirement of section 1016.5, subdivision (a). (See, e.g., *People v. Bravo* (2021) 69 Cal.App.5th 1063, 1072–1073 [section 1016.5 motion failed where plea form stated, "If I am not a citizen of the United States, I understand that this conviction may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States"].)

Perez nonetheless argues he should have been personally admonished by the court at his change of plea hearing. "So long as [a] waiver form contains sufficient information, and both the defendant and his counsel attest to its valid execution, the judge may, in his discretion, dispense with further explanation to the defendant of his rights." (*In re Ibarra* (1983) 34 Cal.3d 277, 286.) Here the court questioned Perez extensively about his execution and understanding of his change of plea form:

> "THE COURT: All right. And I do have your form entitled Declaration by Defendant Change of Plea form. The form has boxes. Alongside of those in various of those boxes appears "J.P." Are those your initials?
>
> "MR. PEREZ: Yes.
>
> "THE COURT: And on the third page of the form there purports to be a signature of Jesse Perez; is that your signature?
>
> "MR. PEREZ: Yes, your Honor.
>
> "THE COURT: And did you initial the boxes?
>
> "MR. PEREZ: Yes, your Honor.
>
> "THE COURT: Did you sign the form after going over the entire form with your attorney?
>
> "MR. PEREZ: Yes, your Honor.
>
> "THE COURT: Do you understand everything on the form?

"MR. PEREZ: Yes.

"THE COURT: Did you have the opportunity to discuss everything on there with your attorney?

"MR. PEREZ: Yes.

"THE COURT: And any questions that you had, did he adequately explain everything on the form to you?

"MR. PEREZ: Yes.

"THE COURT: And you're satisfied now that you do understand everything on the form?

"MR. PEREZ: Yes, your Honor."

The court confirmed Perez had had enough time to discuss the plea terms with his attorney and his family, offering to give him additional time to weigh his options.

The court also questioned Perez's counsel:

"THE COURT: All right. And, Mr. Nascin, you also feel you've had enough time to discuss the matter with Mr. Perez?

"MR. NASCIN: I have, your Honor.

"THE COURT: And per all of your discussion, are you satisfied that you went over the plea form in detail?

"MR. NASCIN: I explained it all to him at length.

"THE COURT: After doing that, you're satisfied he does understand everything on the form?

"MR. NASCIN: Yes."

Given this colloquy, further oral admonishment was not required.

Perez argues section 1016.5 is outdated, as it merely requires notice that a conviction *may* have immigration ramifications when there are now many more circumstances in which immigration ramifications are not merely

6

possible but certain. He claims "section 1016.5 as written in 1977[ ] did not adequately address these changes in immigration law." It is for the Legislature, not the courts, to amend laws. We are bound to apply the unambiguous language of section 1016.5 as written.

Perez also contends, contrary to the statements made at his change of plea hearing, that his counsel failed to advise him "of any immigration consequences." He claims counsel's lack of advice constituted ineffective assistance under California caselaw and sections 1016.2 and 1016.3. Section 1016.2 is a statement of legislative intent that counsel must provide accurate information about immigration consequences when advising a client in accordance with *Padilla v. Kentucky* (2010) 559 U.S. 356, and California precedents. Section 1016.3 outlines counsel's duties but states "[t]his code section shall not be interpreted to change the requirements of Section 1016.5." These standards do not apply to section 1016.5, which requires "*the court* [to] administer" an immigration admonition. (Italics added.) "[S]ection 1016.5 does not provide the trial court with jurisdiction to address a claim that a defendant was deprived of the effective assistance of counsel by counsel's failure to fully advise him or her of the immigration consequences of a guilty plea." (*People v. Aguilar* (2014) 227 Cal.App.4th 60, 71.)

In his reply brief, Perez points to section 1016.5, subdivision (c), which states:

> "With respect to pleas accepted prior to January 1, 1978, it is not the intent of the Legislature that a court's failure to provide the advisement required by subdivision (a) of Section 1016.5 should require the vacation of judgment and withdrawal of the plea or constitute grounds for finding a prior conviction invalid. Nothing in this section, however, shall be deemed to inhibit a court, in the sound exercise of its discretion, from vacating a judgment and permitting a defendant to withdraw a plea."

7

Perez claims the second clause permits a court to "exercise its sound discretion to vacate a judgment premised on sections 1016.2 and 1016.3 and" *People v. Soriano* (1987) 194 Cal.App.3d 1470. It appears this clause refers to the court's discretion concerning pleas entered prior to January 1, 1978. In any event, "[t]he mere statement that a statute does not interfere with any other applicable authority or discretion does not grant additional authority or discretion." (*People v. Chien* (2008) 159 Cal.App.4th 1283, 1288–1289.)

Finally, Perez suggests the warning in his plea agreement was not sufficient because he was only 16 at the time and had suffered a traumatic brain injury affecting his capacity to understand the terms of his plea. Section 1016.5 does not authorize Perez to withdraw his plea based on claimed lack of capacity. It is a limited statute that only concerns whether the court gave the statutorily mandated warning.

B.    *Section 1170, subdivision (d)(1)(A)*

Under section 1170, subdivision (d)(1)(A), "[w]hen a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant was sentenced to imprisonment for life without the possibility of parole has been incarcerated for at least 15 years, the defendant may submit to the sentencing court a petition for recall and resentencing." Perez contends his sentence, 19 years to life, is effectively life without the possibility of parole because the Board of Parole Hearings (Board) will not grant him parole without "realistic" postrelease plans. He argues he "has no fathomable means to create a 'realistic' parole plan in Mexico where he has no connection to except the mere fact that he was born there."

Among the circumstances tending to show suitability for parole, the Board may consider whether "[t]he prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon

8

release."  (Cal. Code Regs., tit. 15, § 2402, subd. (d)(8).)  "The[se] circumstances are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel."  (*Id.*, subd. (d).)  Perez can thus show either postrelease plans *or* marketable skills to demonstrate suitability for release as one factor among many that the Board may consider.  (See *In re Powell* (2010) 188 Cal.App.4th 1530, 1543 [criterion satisfied by "vocational certificates in furniture upholstery, the mattress factory, and watch repair, as well as [evidence of] work experience as the lead in the upholstery factory, as a clerk, and as a porter"].)  There is no categorical requirement for Perez to have detailed plans for a life in Mexico.  (*See In re Andrade* (2006) 141 Cal.App.4th 807, 816–817 ["The entire thrust of the regulation is on practicality."].)

Furthermore, the record does not reflect that Perez has been or will be denied parole because of his lack of connection with Mexico.  At his first parole eligibility hearing in 2014, the Board determined Perez posed a threat to public safety because he "continued to engage in rules violations" and commit "serious misconduct while in prison."  The Board found Perez had "not engaged in institutional activities which would demonstrate . . . [he] would be able to function within the law upon release."  The Board concluded, based on his behavior and statements, Perez "lack[ed] insight into [him]self, into [his] criminality, into [his] gang behavior," and he did not "really demonstrate any signs of remorse in regards to the commitment offense."  The Board encouraged him to gain greater insight into his offense, stating, "Once you have an understanding of why you did what you did, that can convince the Panel that you won't behave that way again in the future."

9

In 2022, Perez again came before the Board, which again denied parole. The Board noted Perez had continued to engage in serious misconduct in prison, including possession of a weapon in 2017 and possession of a cell phone in October 2022, and "continue[d] to express views and attitudes that engage in behaviors that demonstrate lack of change." The Board found he had not engaged in significant rehabilitative programming and expressed concern that he had not "internalized" what he had learned. Finally, the Board found Perez "lack[ed] a concrete realistic parole plan," because while he had letters of support from his sister and brother-in-law offering a home and job, he did not "have acceptance into any type of transition," had not put forth "a plan for self-help in the community," he had not identified a sponsor to help with his substance use issues, and he did not provide "any relapse prevention plans."

In 2023, Perez wrote to the Board, "request[ing] further information in regard to a hearing panel's recommendation for him to obtain parole plans." The Board replied:

> "Having concrete, realistic parole plans addressing community stability factors that may arise upon release into the community, such as stable housing, prospective employment, and pro-social support, could potentially mitigate an individual's risk for future violence. Individuals who may be subject to deportation, such as yourself, could benefit by having parole plans in both their native country and in California in the event they are not deported."

The Board's decisions and clarifying letter do not indicate the Board has held or will hold Perez to an unattainable standard with respect to his postrelease plans in Mexico. His sentence is not the effective equivalent of life without parole.

10

## DISPOSITION

The orders are affirmed.

McCONNELL, P. J.

WE CONCUR:

IRION, J.

DATO, J.

11